# IN THE COURT OF APPEALS OF IOWA

No. 19-0795
Filed July 24, 2019

**IN THE INTEREST OF L.T., A.T., and D.T.,**
**Minor Children,**

**K.T., Mother,**
　　　Appellant.
_____

　　　Appeal from the Iowa District Court for Linn County, Cynthia S. Finley, District Associate Judge.

　　　The mother appeals the termination of her parental rights. **AFFIRMED.**

　　　Ellen R. Ramsey-Kacena, Cedar Rapids, for appellant mother.

　　　Thomas J. Miller, Attorney General, and Anagha Dixit, Assistant Attorney General, for appellee State.

　　　Kimberly A. Opatz of Linn County Advocate, Inc., Cedar Rapids, attorney and guardian ad litem for minor children.

　　　Considered by Potterfield, P.J., and Doyle and May, JJ.

**POTTERFIELD, Presiding Judge.**

The mother's rights to these children were at issue at a termination-of-parental-rights (TPR) hearing in November 2016. After an extended delay, the juvenile court entered a written order in July 2018, terminating the mother's parental rights. The mother appealed, and in *In re L.T.*, 924 521, 530 (Iowa 2019), our supreme court reversed the termination and remanded to the juvenile court.[1] The termination hearing on remand took place in April 2019, and the juvenile court again found the grounds to terminate the mother's parental rights. The mother appeals, arguing the Iowa Department of Human Services (DHS) failed to make reasonable efforts until the July 2018 termination order was entered and termination of her rights is not in the children's best interests. She also asks for additional time to work toward reunification with the children.

**I. Background Facts and Proceedings.**

The mother has a history of involvement with DHS and the juvenile court; her parental rights to two other children were terminated in 2011. The mother's substance abuse, mental-health issues, and instability were at the heart of the case.

DHS became involved with the mother in the present case in May 2015, when D.T. was born testing positive for amphetamines. At that time, L.T. was two years old and A.T. was one year old.

Both the mother and father tested positive for methamphetamine, and all three children were placed in foster care. By Thanksgiving 2015, all three were

---

[1] The father's parental rights were also terminated following the first hearing; he did not appeal and therefore was not part of the termination hearing after remand.

in the care of their foster mother, Samantha, who has remained their caretaker at all times since.

The mother's use of methamphetamine continued, and a hearing on the petition for termination of the parental rights took place in November 2016. At that hearing, the mother acknowledged using methamphetamine one week earlier and stated she "absolutely" needed treatment for her abuse of substances. The juvenile court deemed the matter submitted in late November.

The State sought to reopen the record, and its request was granted. At the May 23, 2017 hearing for that purpose, the State admitted additional exhibits. The mother testified she received notice she was approved for subsidized housing. The mother was unemployed and, though she was attending substance-abuse treatment, admitted to relapsing on methamphetamine in February and April 2017 and not attending a drug screen one week earlier. At the close of the hearing, the court stated from the bench that it was going to grant the State's petition to terminate the mother's parental rights pursuant to Iowa Code section 232.116(1)(f), (g), and (h) (2016); the court noted a written order would be entered.

In October 2017, the mother filed a motion asking that reasonable efforts continue until a written termination order was entered. In the motion, the mother maintained that, after receiving a final visit with the children following the court's statement from the bench, she did not have any other contact with the children and was not otherwise receiving services. Specifically, the mother requested ongoing visits and phone calls with the children, a family team meeting, drug testing, and assistance with furnishing her new home.

On July 1, 2018, the mother filed a motion asking the court to allow her to reopen the record to introduce evidence of her progress since the May 2017 hearing.

The juvenile court entered a written order terminating the mother's parental rights to L.T., A.T., and D.T. on July 27—approximately twenty months after the November 2016 TPR hearing. The court also entered an order denying the mother's July 2018 request to reopen the record and October 2017 request for reasonable efforts.

The mother appealed the juvenile court's decision, and, in March 2019, our supreme court determined the juvenile court's decision to not reopen the record for the mother was in error. *L.T.*, 924 N.W.2d at 530. Based on this conclusion, the supreme court reversed the termination of the mother's parental rights and remanded the case to the juvenile court to reopen the record. *Id.* at 527. Additionally, the supreme court concluded the statutory obligation of DHS to make reasonable efforts "continues until either a final written termination order or a waiver by the juvenile court" and ordered the juvenile court on remand to "consider DHS's efforts, or lack of efforts, in the period following the district court's termination hearing in determining whether the State has shown reasonable efforts as part of its ultimate proof." *Id.* at 530.

The TPR hearing on remand took place in late April 2019. At it, the mother testified that she had maintained the same home since November 2017 with the help of a Section 8 voucher. The mother's voucher had recently been terminated when she failed to provide some necessary paperwork, and she believed she would need to move to a more affordable home; she would have to

wait for five years to become eligible for another voucher. The mother testified her sober date from methamphetamine was September 27, 2018—two months after the written TPR order was entered. The mother did not have any evidence of her recent sobriety; she did not take drug tests or have evidence of any substance-abuse treatment she completed. The mother had a "goodbye visit" with the children in July 2017; she did not have any contact with them afterward.[2] The mother was employed at a restaurant at the time of the hearing—a job she had kept for about one year. She did not work regular hours and sometimes went a couple weeks without working. The mother testified her volatile relationship with the father was over, though she acknowledged they were still legally married and that she had attempted to reconcile with him in August or September 2018. Two DHS social workers testified—the worker assigned to the children in September 2018 as their adoption worker, Katy, and the worker who had been assigned to the family from June 2015 until September 2018, Laura. Katy testified she had not provided any services to the mother since she took over the case. Laura testified she did not provide or allow the mother to have any visits with the children after the final June 2017 visit because she believed a written termination order was imminent and that further contact between the children and the mother, who was openly admitting to Laura that she continued to use methamphetamine, was not in the children's best interests. Laura also testified she did not authorize further drug testing for the mother because at the

---

[2] Both the mother and the foster mother testified about a time they saw each other at Target while the children were with the foster mother. The mother shouted she loved the children across the parking lot, but the children did not hear her and there was no other interaction.

time the mother requested it as a "reasonable effort"—October 2017—the mother was continuing to admit use, making drug tests unnecessary. Regarding the mother's request for help furnishing her home, Laura testified DHS does not provide funding to parents to help furnish a home. In the months following the court's stated intention to terminate the mother's parental rights, the mother continued to reach out to Laura and the family's service provider with questions and for advice, and both Laura and the service provider met and spoke with the mother.

Less than a week after the hearing on remand, the juvenile court entered a written order. The court noted that the mother testified she participated in a faith-based recovery organization for her substance abuse beginning in October 2018, but the only objective evidence she presented was a paper with the heading "Results & Recommendations" that stated, "[The mother] has initiated the assessment process and is anticipated to complete her evaluation October 22, 2018." The document was signed and dated April 18, 2019. Per the juvenile court,

> What is glaringly absent is any documentation of dates attended or progress toward discharge made, even though approximately six months had passed since the time of the anticipated evaluation. . . . Of particular concern is evaluating whether [the mother] is actually in substance abuse treatment is that she was not able to articulate any treatment goals, nor any idea as to when she would be considered to discharge from treatment.

The court also considered whether the State provided reasonable services, ruling:

> In this case, considering the length of time [the mother] had been given to work with the full spectrum of services, her admission to continued use of methamphetamine, and lack of stability in other areas such as housing and employment, it was reasonable after

one year and eleven months of services in the current case, plus those given to address the same issues in the previous case, to focus the efforts provided to the family on those needed by the children for their long term stability and nurturing in a permanent home with an adoptive family. The court, in May 2017, made this change in focus clear by informing the parties of [its] intention to grant the State's Petition for Termination of Parental Rights.

The Court finds that reasonable and adequate services have been provided to the family both in an attempt to achieve family reunification and to achieve permanent placement for the children. If [the mother] had been willing or able to address the issues with the services provided, she could have clearly done so over all the years that services have been provided. [The mother] was additionally provided the opportunity for more intensive services and supervision when she was accepted into Family Treatment Court on September 25, 2015, but was discharged unsuccessfully on July 28, 2016. As of May 2017, after what [DHS] believed to be a valid verbal termination of the parent's rights, services became geared to the goal of adoption and focused strictly on the girls' wellbeing and progress toward permanency through adoption. . . .

In addition, during the time between May 2017 and April 2019, at any point [the mother] reached out to any of the providers, they met with her and offered advice and support on whatever issues she needed to discuss. . . .

During the time period between May 2017 and April 2019, services continued to be provided to the children to secure permanent placement for them. They had a final visit with [the mother], received counseling services, and regular visitation and supervision by the adoption worker, Katy . . . . The court finds these services to be reasonable under the specific facts of this case. If the court had granted the Mother's request to reopen the record in July 2018, the testimony would show that [she] admitted that she continued to regularly use methamphetamine, was not actively involved in substance abuse treatment, had achieved housing, and had sporadic employment. The children could not have been returned to [the mother] without being subjected to adjudicatory harm in July 2018, nor could they be returned now, or in the reasonably near future.

The juvenile court terminated the mother's parental rights pursuant to Iowa

Code section 232.116(1)(f) (L.T. and A.T.), (g) (all children), and (h) (D.T.).[3]

The mother appeals.

---

[3] The juvenile court did not specify which sections it applied to which parent-child relationship.

**II. Standard of Review.**

"We review termination proceedings de novo." *In re C.B.*, 611 N.W.2d 489, 492 (Iowa 2000). "The primary interest in termination proceedings is the best interests of the children." *Id.*

**III. Discussion.**

Here, the juvenile court terminated the mother's parental rights pursuant to section 232.116(1)(f), (g), and (h). The mother does not specifically dispute any of the elements of the paragraphs under which her rights were terminated. But she does challenge whether the State fulfilled its obligation to make reasonable efforts until the written termination order was entered in July 2018. Challenging reasonable efforts implicates the fourth element of paragraphs (f) and (h). *See id.* at 493 ("[T]he reasonable efforts requirement is not viewed as a strict substantive requirement of termination. . . . The State must show reasonable efforts as a part of its ultimate proof the child cannot be safely returned to the care of a parent.").

The State has the obligation to make reasonable efforts until the final termination order is entered. *See L.T.*, 924 N.W.2d at 528 ("We think the reasonable efforts obligation runs until the juvenile court has entered a final written order of termination."). But those efforts do not necessarily have to be aimed toward reunification of the children and parent, and under these facts and circumstances, we cannot fault DHS for discontinuing such services. *See id.* at 528–29. At the time of the May 2017 hearing, the mother had almost two years of services in the present case as well as additional services in her first case involving the children to whom her rights were terminated in 2011; the mother

continued to have issues with substance abuse and instability and was not able to parent the children. Moreover, at no time before the July 2018 termination order was entered was the mother able to reunify with the children, as she continued to use methamphetamine consistently until at least September 2018.

The mother maintains she should have been allowed to have visits and phone calls with the children until the July 2018 TPR order. Visitation is not a required part of reasonable efforts. *See In re M.B.*, 553 N.W.2d 343, 345 (Iowa Ct. App. 1996) (considering reasonable efforts and noting, "Visitation, however, cannot be considered in a vacuum"). And no evidence at the April 2019 hearing indicated continuing visitation would have helped the mother be able to resume caring for her children. *See id.* According to the juvenile court's May 2017 statement from the bench:

> The problem is, neither you or [the father] have really been able to gain control of your addiction issues, and your substance abuse issues, and, that, combined with mental health issues is the primary reason that your children cannot be safely returned to your care. It's not about your ability to feed them the right food or to pay attention to their needs, it's about your continuous use of substance. And I wish it were different, but it's not.

Additionally, we credit the DHS worker's statements that there was no value in continuing to authorize drug testing for the mother as she readily admitted to her use of substances throughout the time between May 2017 and the July 2018 order and that DHS does not have a service that includes giving parents funds for furniture. It is unclear what the mother hoped to achieve with the requested family-team meeting; without more, we cannot say this is a service DHS had to provide in order to meet its reasonable-efforts mandate.

Although DHS discontinued services aimed at reunifying the mother and the children, the family's social worker and service provider continued to be resources for the mother and continued to meet with her when she requested it following the May 2017 statement from the court. And the children continued to receive a number of services—both those aimed at permanency and their adoption and also other services as needed, such as therapy services and evaluations. Under these unique facts and circumstances, DHS met its burden to make reasonable efforts.

Next, the mother claims termination of her parental rights is not in the children's best interests. *See* Iowa Code § 232.116(2). The mother asks us to consider the bond she shared with the children at the time of the 2016 TPR hearing.[4] But we cannot ignore the reality of the children, who, at the time of the hearing on remand, were ages six, five, and three years[5] and had been in the care of their foster mother approximately three and one-half years. *See L.T.*, 924 N.W.2d at 529 ("Our caselaw has recognized that the interests of the child take precedence over family reunification. Our primary concern in termination proceedings has always been the best interests of the child."). At the recent hearing, testimony indicated the children are happy and well cared for in the home of the foster mother. *See* Iowa Code § 232.116(2)(b). The foster mother has provided a safe, stable home for these children throughout the entirety of

---

[4] Even if we could consider the facts and circumstances as they existed more than two years ago, we would not be convinced the children were so bonded to their mother that termination is not in their best interests. The children were ages three, two, and one years at the time of the first termination hearing and had been out of the mother's care for approximately fourteen months.

[5] D.T. was one month shy of turning four at the time of the hearing on remand.

these proceedings; it is in their best interests to remain in the home without disruption.

Finally, the mother argues she should be given additional time—with the resumption of services geared toward reunification—to show she can parent the children safely. She maintains additional time would allow her to prove her sobriety. The extended duration of these proceedings is not the fault of the mother, but she failed to make use of the delay. By her own admission, she continued to use methamphetamine regularly during the nearly twenty months between the termination hearing in November 2016 and the entry of the written ruling in July 2018. The proceedings of this case have been somewhat extended, but our maxims hold true: childhood is short and does not await the wanderings of the judicial process. *In re A.C.*, 415 N.W.2d 609, 613 (Iowa 1987). Children deserve permanency sooner rather than later. *See In re J.L.W.*, 570 N.W.2d 778, 781 (Iowa Ct. App. 1997), *overruled on other grounds by In re P.L.*, 778 N.W.2d 33, 39 (Iowa 2010).

We affirm the termination of the mother's parental rights.

**AFFIRMED.**